IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, vs. | ) | |
| | ) | |
| TIMOTHY W. BAUGH, | ) | CASE NUMBER: 21-MJ-8253-GCS |
| JOHN A. GARCIA, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

### CRIMINAL COMPLAINT

I, Timothy Birckhead, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief:

### COUNT 1
### CONSPIRACY TO DISTRIBUTE AND POSSESS WITH INTENT TO DISTRIBUTE CONTROLLED SUBSTANCES: METHAMPHETAMINE AND COCAINE

Beginning at an unknown time but at least by in or about January 2020, and continuing until on or about October 7, 2021, in St. Clair County, within the Southern District of Illinois, and elsewhere,

**TIMOTHY W. BAUGH and
JOHN A. GARCIA,**

defendants herein, did conspire and agree together and with others, known and unknown to the Grand Jury, to knowingly and intentionally distribute and possess with intent to distribute controlled substances, to wit: 500 grams or more of a mixture or substance containing a detectable amount of Methamphetamine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(viii); and 5 kilograms or more of a mixture or substance containing a detectable amount of Cocaine, a Schedule II Controlled Substance, in

1

violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(ii); all in violation of Title 21, United States Code, Section 846.

## COUNT 2
### DISTRIBUTION OF CONTROLLED SUBSTANCE: METHAMPHETAMINE

On or about September 27, 2021, in St. Clair County, within the Southern District of Illinois,

**TIMOTHY W. BAUGH,**

defendant herein, did knowingly and intentionally distribute 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B)(viii).

## COUNT 3
### POSSESSION OF A FIREARM IN FURTHERANCE OF A DRUG TRAFFICKING CRIME

On September 27, 2021, in St. Clair County, within the Southern District of Illinois,

**TIMOTHY W. BAUGH,**

defendant herein, did knowingly possess a .357 revolver, serial number unknown, in furtherance of a drug trafficking crime for which he may be prosecuted in a court of the United States, to wit: Distribution of Controlled Substance: Methamphetamine, as charged in Count 2, all in violation of Title 18, United States Code, Section 924(c)(1)(A).

## COUNT 4
### POSSESSION WITH INTENT TO DISTRIBUTE CONTROLLED SUBSTANCE: METHAMPHETAMINE

On or about October 7, 2021, in St. Clair County, within the Southern District of Illinois,

**TIMOTHY W. BAUGH,**

defendant herein, did knowingly and intentionally possess with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule

II Controlled Substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(viii).

## COUNT 5
### POSSESSION WITH INTENT TO DISTRIBUTE CONTROLLED SUBSTANCE: COCAINE

On or about October 7, 2021, in St. Clair County, within the Southern District of Illinois,

**TIMOTHY W. BAUGH,**

defendant herein, did knowingly and intentionally possess with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B)(ii).

## COUNT 6
### FELON IN POSSESSION OF A FIREARM

On or about October 7, 2021, in St. Clair County, within the Southern District of Illinois,

**TIMOTHY W. BAUGH,**

defendant herein, knowingly possessed a firearm in and affecting commerce, that is, an Anderson Manufacturing AM-15 rifle, serial number 20218057; Sky 9mm handgun, serial number 364359; Beretta 9mm handgun, serial number B393994; Harrington & Richardson revolver, serial number 82901; CMMG model Mk10 pistol, serial number CA800682; and Mossberg Model 835 shotgun, serial number UM547316; having previously been convicted of a crime punishable by imprisonment for a term exceeding one year, and knowing that he had been convicted of such a crime, all in violation of Title 18, United States Code, Section 922(g)(1) and 924(a)(2).

## AFFIDAVIT

1.     I, Timothy B. Birckhead, am an investigative and law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 115, and am empowered by law to conduct investigations and arrests for offenses enumerated in Title 18, United States

Code, Section 2516. Since January 2021, I have been assigned to the Drug Enforcement Administration (DEA) as a Task Force Officer, located in Fairview Heights, Illinois. In conjunction with my employment as a Task Force Officer, I have served as a police officer with the Fairview Heights, Illinois Police Department for approximately eleven (11) years. As part of my duties as a DEA Task Force Officer, I investigate drug crimes in violation of federal law, including Title 21, United States Code, Sections 841(a) and 846, occurring the Southern District of Illinois and elsewhere. During the course of my law enforcement career, I have participated in numerous narcotics investigations involving the manufacture, transportation, and distribution of controlled substances. I was previously assigned to a "street crimes" unit with the Fairview Heights Police Department for 2 years. During these 2 years, the focus of the unit was investigating and prosecuting drug offenses occurring within the city of Fairview Heights. These investigations have resulted in the seizure of controlled substances and proceeds from the sale of controlled substances, as well as the arrests of drug traffickers. I have further participated in drug related training courses throughout my law enforcement career. I am familiar with normal methods of investigation, including but not limited to physical and electronic surveillance, interviews of suspects and witnesses, the use of search and arrest warrants, the use of informants, the use of pen registers, analysis of telephone records, the utilization of undercover agents, and the use of court-authorized wire intercepts. I work in collaboration with a group of DEA Special Agents and other law enforcement officers. These Special Agents and officers have participated in numerous drug investigations, which have resulted in the seizure of heroin, methamphetamine, crystal methamphetamine, cocaine, marijuana, and other controlled substances. My opinions and conclusions in this Affidavit are based on the investigation to date combined with my training and

conversations with other experienced Special Agents and law enforcement officers on the investigative team.

2. The statements contained in this affidavit are based on my investigation, as well as information derived from reports and interviews of the law enforcement officers and witnesses named herein. This affidavit is meant to state facts sufficient to support a finding of probable cause that the named Defendant committed the charged offense and is not meant to contain a complete record of the entire investigation to date. In support of this Complaint, your affiant states as follows.

3. The United States is investigating a conspiracy to distribute crystal methamphetamine and cocaine, as well as the unlawful possession and sale of firearms in the Southern District of Illinois. The investigation concerns possible violations of, *inter alia*, Title 21, United States Code, Sections 841 and 846, and Title 18, United States Code, Section 922.

4. In August 2021, members of the DEA Fairview Heights Resident Office (FHRO) initiated an investigation into the narcotics distribution activities of Timothy BAUGH (hereinafter "BAUGH"), occurring in the Southern District of Illinois. BAUGH has a criminal history which includes convictions for burglary, domestic battery, aggravated fleeing from police, manufacture/delivery of cannabis, and manufacture/delivery of controlled substances.

5. The investigation of BAUGH was based on information developed by three separate Confidential Sources. The first Confidential Source (hereinafter "CS#1") approached your affiant voluntarily and is not currently under investigation by the DEA. CS#1 has previously provided information to the DEA that resulted in criminal prosecution. The information provided by CS#1 in this investigation has been corroborated by surveillance, criminal history information,

and recorded audio telephone calls. To date, agents have not found information provided by CS#1 to be false or misleading. Two other Confidential Sources (CS#2 and CS#3) have been used during this investigation as well. CS#2 is currently cooperating with investigators for judicial consideration for controlled substance charges. The information provided by CS#2 has been corroborated by surveillance, criminal history information, recorded audio telephone calls, and an audio-video recording meeting. To date, agents have not found information provided by CS#2 to be false or misleading. CS#3 is also cooperating with investigators for judicial consideration for controlled substance charges. The information provided by CS#3 has been corroborated by surveillance and an audio-video recording meeting. To date, agents have not found information provided by CS#3 to be false or misleading.

6. On August 17, 2021, CS#1 met with your affiant and Special Agent Winfred Strickland at the Fairview Heights Resident Office. CS#1 stated he/she has known Timothy BAUGH since sometime in December 2020. CS#1 stated quickly after being introduced to BAUGH, he/she became aware of BAUGH's heavy involvement in the sale of illegal drugs, specifically crystal methamphetamine, cocaine, and marijuana.

7. CS#1 stated BAUGH lives at 521 N. 2nd Street, Dupo, IL but also has additional properties in the Dupo/East Carondelet area that he rents out, including at 2271 Loren Street. CS#1 stated there is a detached garage on the property that BAUGH has access to and within which he is known to store illegal drugs. CS#1 stated BAUGH will either conduct drug deals at 521 N. 2nd Street or at one of his several rental properties. CS #1 stated BAUGH keeps money counters, large amounts of US currency, and firearms within his residence.

8. CS#1 stated he/she has been present when BAUGH's source of supply has come up from Texas. CS#1 stated in July 2021, two Mexican males drove from Texas to the garage located at 2271 Loren Street.

9. CS#1 stated in July 2021, the two unknown Mexican males brought approximately 20 kilograms of cocaine, 20 pounds of crystal methamphetamine, 50 pounds of marijuana, approximately 1,000 counterfeit "Percocet" pills, and several semi-automatic rifles and pistols. CS#1 stated the same two unknown Mexican males supply BAUGH approximately every month with illegal drugs and weapons.

10. CS#1 stated BAUGH sells a kilogram of cocaine for between $46,000 and $49,000 each, a pound of crystal methamphetamine for between $3,500 and $5,600, $20 for each Percocet pill, a pound of marijuana for approximately $2,500, and rifles for approximately $1,000 each.

11. CS#1 stated he/she has also purchased illegal drugs directly from BAUGH as recently as two weeks prior to our meeting. CS#1 stated he/she would not have difficulty in purchasing pounds of crystal methamphetamine, ¼ kilograms of cocaine, and firearms directly from BAUGH.

12. On August 20, 2021, your affiant was contacted by Sauget Police Officer Aaron Morgan regarding his unrelated arrest of BAUGH on a traffic stop at approximately 12:14 a.m. According to the Sauget Police report, Officer Morgan had pulled over BAUGH for a turn signal violation and a defective muffler. Officer Morgan had observed a small bag of what he recognized to be cocaine sitting on BAUGH's seat. Officer Morgan took BAUGH into custody, and while doing so, BAUGH admitted there were additional drugs located in the center console of his vehicle. Additionally, approximately $12,415 USC was located on BAUGH.

13. Special Agent Strickland and your affiant responded to the Sauget Police Department and took custody of approximately 161.8 gross grams of suspected cocaine and approximately 89.8 gross grams of suspected crystal methamphetamine. The substances were sent to the laboratory for testing but appear consistent with substances seized in prior investigations and determined to be methamphetamine and cocaine.

14. Special Agent Strickland and your affiant conducted a post-Miranda interview of BAUGH. During this interview, BAUGH made the following statements:

    a. He thought everything had been hidden in the center console but there was a bag sitting out still.

    b. He didn't remember for sure if he used a blinker or not.

    c. He had 2 small bags of "ice," 4 ounces of cocaine, and 3 smaller bags of cocaine.

    d. He doesn't have any drugs or firearms at his residence.

    e. He has additional crystal methamphetamine located in a garage at 2271 Loren Street.

    f. When asked what he was doing with the drugs, BAUGH stated he was "going to distribute it to a couple different people."

    g. He works doing asbestos removal and sells drugs to make additional money to pay off some debts.

    h. He sells ice for around $250 per ounce and cocaine for approximately $1,300 per ounce.

15. After the interview, BAUGH agreed to allow agents to escort him to 2271 Loren Street and retrieve the additional crystal methamphetamine. Special Agent Strickland located a bag of crystal methamphetamine weighing approximately 72.0 gross grams in a black GMC pickup truck parked in the garage registered to BAUGH. Your affiant located 2 additional bags of crystal methamphetamine weighing approximately 84.1 gross grams in a box on the work bench inside the garage.

16. On August 23, 2021 at approximately 12:15 p.m., another subject named Jody Loeh called CS#1 wishing to purchase 5 ounces of crystal methamphetamine. CS#1 had this conversation with Loeh on speaker phone in the presence of your affiant and other agents. CS#1 informed agents that he/she acts as a "middle man" between drug deals with Loeh and BAUGH. CS#1 stated Loeh would meet him/her at his/her house and provide the money for the crystal methamphetamine. CS#1 would then provide the money to BAUGH, who would then provide the crystal methamphetamine to CS#1 to give to Loeh.

17. Special Agent Strickland and your affiant directed CS#1 to call BAUGH with regards to the deal with Loeh. CS#1 relayed the request from Loeh to BAUGH, who asked how much money Loeh was coming with. CS#1 told BAUGH that Loeh was bringing cash for everything, and BAUGH replied "hit me up when he gets here, I'll be close."

18. CS#1 stated Loeh purchases crystal methamphetamine and cocaine from BAUGH on a weekly basis for the last few months. CS#1 stated he/she has brokered these deals in the same fashion for the previous purchases.

19. Agents established surveillance at 2271 Loren Street to monitor the transaction. Agents also provided CS#1 with several audio and video recording devices. At approximately 1:50

p.m., Special Agent Callon Andrews observed a white Ford Explorer arrive at the house (with Loeh present inside). At approximately 2:24 p.m., CS#1 arrived at the residence and he/she spoke with Loeh.

20. CS#1 determined Loeh still owed BAUGH money from their previous purchase. They determined Loeh had enough money to purchase 2 ounces of crystal methamphetamine and 3.5 grams of cocaine after paying BAUGH what he owed previously.

21. Illinois State Police assisted agents by providing aerial surveillance during this transaction. Trooper Skrobul observed a white Dodge Ram pickup arrive at 521 N 2nd Street that was confirmed by TFO Jason Wolf to have Illinois registration 153084.

22. BAUGH was observed exiting the Dodge Ram pickup with another unknown subject. BAUGH and the other subject are observed entering a detached garage behind the house, exiting the garage and then entering into 521 N. 2nd Street. Due to trees obscuring the view of the aerial surveillance, neither subject was observed exiting the residence. After a few moments, a black Nissan Altima parked in the driveway was observed leaving. The Nissan had Illinois registration CV68988 and was also registered to BAUGH. Surveillance was maintained on the Nissan as it drove to 3837 Elm Ave, Dupo, IL and parked in the driveway at approximately 3:13 p.m. After arriving, the passenger door opened and a subject appeared to walk toward the residence. At 3:23 p.m., BAUGH was observed exiting the detached garage of 3837 Elm Ave. Due to obstructions from aerial surveillance, the vehicle was not observed leaving the driveway. TFO Wolf observed the Nissan on I-255 northbound but surveillance was lost due to inclement weather.

23. At approximately 3:28 p.m., Special Agent Andrews observed the Nissan arrive at 2271 Loren Street with BAUGH being the only occupant. CS#1 retrieved the money from Loeh

and sat down in BAUGH's vehicle. BAUGH counted the money and CS#1 retrieved the bags of crystal methamphetamine and cocaine from BAUGH.

24. CS#1 returned to his/her own vehicle and provided the bags of cocaine and crystal methamphetamine to Loeh. While they were speaking, BAUGH was observed leaving the residence.

25. Agents maintained surveillance of the Ford that Loeh arrived in. At approximately 4:01 p.m., TFO Kyle Waddington conducted a traffic stop of the Ford. TFO Travis Hoguet assisted on the traffic stop and deployed his K-9 partner to conduct a sniff of the vehicle, resulting in a positive alert.

26. Due to heavy rainfall, the vehicle and occupants were moved to the garage of nearby Fairview Heights Police Department. Upon searching Loeh, your affiant discovered a hard object in his groin area. Upon removal, your affiant discovered 102 gross grams of suspected crystal methamphetamine and approximately 39.5 gross grams of suspected cocaine. Agents also discovered approximately 32.0 gross grams of suspected cocaine within a bag inside the Ford.

27. Your affiant attempted to conduct an interview with Loeh after advising him of his Miranda Rights and he did not wish to provide a statement.

28. CS#1 placed another recorded phone call at the direction of agents on September 1, 2021. BAUGH stated it would be $31,000 for the half-kilogram and 2 pounds of crystal methamphetamine. BAUGH stated they each would make $1,000 off of the deal.

29. On September 16, 2021, agents directed CS#2 to place a recorded phone call to BAUGH to inquire about the price of crystal methamphetamine. BAUGH told CS#2 it would cost $300 per ounce of crystal methamphetamine.

30. CS#2 stated he/she had previous knowledge of BAUGH and has known him for several years. CS#2 stated he/she last purchased crystal methamphetamine from BAUGH a few months ago and bought several ounces of crystal methamphetamine during that purchase. CS#2 stated the most he/she has purchased from BAUGH was approximately 1 pound and purchased it last year. CS#2 stated BAUGH always has a firearm with him. CS#2 stated he/she has always met BAUGH at various locations and has not been present within his actual residence.

31. On September 27, 2021 at approximately 12.25 p.m., SA Strickland met with CS#2 and CS#3 at an undisclosed location. Other agents established surveillance at the Target Residence and observed a black GMC pickup in the driveway registered to BAUGH. CS#2 was directed to place a recorded phone call to BAUGH and requested to purchase 8 ounces of crystal methamphetamine. BAUGH stated he would call CS#2 back and provide him with an address to meet.

32. At approximately 12:51 p.m., BAUGH called CS#2 again and confirmed he wanted 8 ounces of crystal methamphetamine and told CS#2 he would sell it for $250 per ounce. BAUGH stated he would meet in approximately 10 minutes.

33. At approximately 1:07 p.m., BAUGH called CS#2 and told him to meet him at 234 Elizabeth Avenue. At approximately 1:17 p.m., CS#2 and CS#3 departed to travel to the meet location, arriving at approximately 1:30 p.m.

34. At approximately 2:04 p.m., SA Julie Olmsted observed BAUGH exit the Target Location and enter into his GMC pickup truck parked in the driveway. Surveillance was maintained on the vehicle as it drove from the Target Location to 234 Elizabeth Ave.

35. After BAUGH arrived at 234 Elizabeth, CS#2 approached the driver's door of BAUGH's truck. CS#2 commented to BAUGH about a revolver he/she observed on BAUGH's lap. BAUGH stated it was a .357 and picked it up, eventually putting it into his pocket. BAUGH retained possession of the firearm for the duration of the drug transaction.

36. CS#2 and BAUGH continued talking, and BAUGH retrieved a clear plastic bag containing approximately 256.6 gross grams of suspected crystal methamphetamine that was sitting between his legs and handed it to CS#2. CS#2 then provided BAUGH with the $2,400 OAF and placed the crystal methamphetamine back into his/her vehicle. BAUGH, along with CS#2 and CS#3 entered the residence and spoke for several minutes.

37. At approximately 2:29 p.m., SA Strickland and TFO Birckhead met with CS#2 and CS#3 and collected the crystal methamphetamine. The substance was sent to the laboratory for testing but appears consistent with methamphetamine seized in prior investigations and determined to be methamphetamine.

38. On October 5, 2021, the Honorable Judge Gilbert C. Sison signed a federal search warrant for BAUGH's residence of 521 N. 2nd Street, Dupo, IL.

39. On October 7, 2021, at approximately 8:15 a.m., the search warrant was executed by DEA Special Response Team and members of the Fairview Heights Resident Office.

40. During the course of the search warrant, agents located and seized the following items on the property:

   a. Approximately 19.5 pounds of suspected crystal methamphetamine

   b. Approximately 0.75 kilograms of suspected cocaine

   c. Approximately 10 kilograms of suspected marijuana/marijuana edibles

  d.  Anderson Manufacturing AM-15 rifle, S/N 20218057

  e.  Sky 9mm handgun, S/N 364359 (reported stolen from East St Louis)

  f.  Beretta 9mm handgun, S/N B393994

  g.  Harrington & Richardson revolver, S/N 82901

  h.  CMMG model Mk10 pistol, S/N CA800682

  i.  Mossberg Model 835 shotgun, S/N UM547316

41. Agents took custody of BAUGH inside the residence without incident. SA Strickland and your affiant spoke to BAUGH in your affiant's government vehicle, and provided him with his Miranda Warnings, which he stated he understood.

42. During the interview, BAUGH stated the following:

  a.  There were no drugs or guns in the house.

  b.  There was were no drugs at any of his other houses.

  c.  Agents could search his trucks and vehicles.

  d.  Agents could search his property at 3837 Elm Ave.

  e.  BAUGH told agents the location of the keys to his various vehicles.

43. Your affiant transported BAUGH to the FHRO for additional questions. Your affiant and SA Strickland spoke with BAUGH again and refreshed his Miranda Warning, which he stated he understood. BAUGH provided the following additional information during the interview:

  a.  He hasn't worked for the last month or 2.

  b.  He purchased 8-9 ounces of cocaine approximately 1 month ago.

c. He hasn't been selling drugs very often since he was arrested in August; a few ounces of cocaine and a few pounds of marijuana at most.

d. BAUGH was eventually shown pictures of the drugs and guns seized during the search warrant, and he stated he would be honest from this point forward.

e. He bought 5 kilograms of crystal methamphetamine and a kilogram of cocaine a few days ago from a subject named Johnny.

f. The drugs had been brought to him at his house in Dupo, IL.

g. He paid $25,000 for the cocaine and crystal methamphetamine and still owed Johnny approximately $17,000.

h. He has been purchasing crystal methamphetamine and cocaine from Johnny for the last year and a half.

i. He has purchased and sold approximately 7-8 kilograms of cocaine during this time period and approximately 10 kilograms of crystal methamphetamine.

j. He sells ounces of crystal methamphetamine for $300 per ounce and cocaine for $1,400 per ounce.

k. He went to Dallas, TX a few weeks ago to pay Johnny approximately $30,000 that was owed.

l. In regard to the firearms, BAUGH stated he purchased them for protection, since he has been around some "shady characters" lately but doesn't keep them inside.

m. SA Strickland showed him a photograph of the guns, and BAUGH stated he didn't keep those guns inside.

n. SA Strickland asked what guns he had, and BAUGH stated an "AR, 12 gauge, MX10, a 9 (mm)."

o. SA Strickland commented on a scope mounted on the rifle, and BAUGH stated it was "to help him see better."

p. TFO Birckhead asked if there were any guns in his cars, and BAUGH stated that's where the firearms were all kept (from the photographs).

q. BAUGH stated he usually carries the 9mm with him. He usually leaves it in his vehicle in case "shit pops off."

r. When asked about a .357 revolver, BAUGH admitted that he previously owned a .357 revolver and described it (matching the description given by CS#2 and depicted in video recording of the drug transaction with CS#2). However, he said it belonged to someone else and he returned it to that person last week.

44. BAUGH provided agents with "Johnny's" phone number, which returned through law enforcement databases with registration information to John GARCIA. BAUGH also had photographs of "Johnny" on his cellular telephone, which match the appearance of GARCIA.

45. BAUGH then conducted a controlled phone call, further corroborating the statements provided by BAUGH and confirming his identity. BAUGH and GARCIA spoke about the quality of the product and the money that was owed from BAUGH to GARCIA.

46. Agents from the DEA St Louis Division were familiar with GARCIA and made phone contact with him, requesting he come in for a voluntary interview. GARCIA agreed to do so and drove himself to the location within 20 minutes.

47. At approximately 3:00 p.m., your affiant and other DEA special agents spoke with GARCIA in the conference room at the DEA St Louis Division Office. GARCIA was provided with his Miranda Warnings. GARCIA spoke at great length and provided inconsistent stories for much of the conversation. The following is a summary of the interview, but is not verbatim:

    a. He supplied BAUGH with 5 kilograms of crystal methamphetamine and close to a kilogram of cocaine 2 days ago.

    b. He took the crystal methamphetamine and cocaine to BAUGH's house in Dupo, IL, on his own.

    c. He has approximately $47,000 in his vehicle outside that was from BAUGH; some that was paid this week and some from a previous payment.

    d. He first started dealing with BAUGH around January 2020.

    e. He had previously supplied a friend of BAUGH's named "Cadillac" until "Cadillac" was killed.

    f. He then began supplying BAUGH in place of "Cadillac."

    g. In total, he has supplied BAUGH with approximately 40 kilograms of crystal methamphetamine and 5-6 kilograms of cocaine since around January 2020.

    h. He would supply BAUGH with drugs every couple of weeks.

    i. In total, he has gained approximately $30,000 in profit from his dealings with BAUGH.

    j. In total, he has collected an estimated $500,000 from his dealings with BAUGH.

  k. He would typically bring the cocaine and crystal methamphetamine up to one of BAUGH's houses from Texas.

  l. BAUGH has also traveled to meet him in Texas to make payments.

48. GARCIA provided consent to search his vehicle and agents were initially unable to locate the currency GARCIA stated was inside. GARCIA then informed agents it was actually concealed within a "trap" that had been installed on the vehicle when he bought it.

49. GARCIA was escorted out to his vehicle and manipulated several controls inside of it, unlocking two concealed compartments in the rear passenger areas of his vehicle. Inside one of the compartments, agents located several shopping bags that contained an undetermined amount of US currency.

50. GARCIA also allowed agents to search an apartment he rents in St. Louis, which did not yield any illegal items.

51. BAUGH has previous felony convictions for Burglary, Aggravated Fleeing from Police, Manufacturing/Delivering Cannabis/30-500 Grams, Manufacturing/Delivering Control Substances, Domestic Battery/Prior, and Possession of Cannabis.

52. Timothy BAUGH is currently in custody at the Monroe County Sheriff's Department in Waterloo, IL.

53. GARCIA has previous felony convictions for Engaging in Organized Criminal Activity, Aggravated Robbery, Escape While Arrested, and Possession Marijuana 5-50 Lbs.

54. John GARCIA is currently in custody at the Monroe County Sheriff's Department in Waterloo, IL.

FURTHER AFFIANT SAYETH NAUGHT.

                                              Timothy Birckhead
                                              Task Force Officer
                                              Drug Enforcement Administration

State of Illinois      )
                         )   SS.
County of St. Clair  )

Sworn to before me, and subscribed in my presence on the 8th day of October, 2021, at East St. Louis, Illinois.

                                              GILBERT C. SISON
                                              United States Magistrate Judge

*Digitally signed by Judge Sison 2 Date: 2021.10.08 18:17:06 -05'00'*

STEVEN D. WEINHOEFT
United States Attorney

AMANDA FISCHER
Assistant United States Attorney